UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2009 NOV 12 P 12: 22



| | |
|---|---|
| SANDRA GIUFFRE, | * CIVIL ACTION NO. |
| Plaintiff, | * |
| v. | * |
| | * NOVEMBER 12, 2009 |
| JONATHAN COLE, | * |
| Defendants. | * |

## COMPLAINT

### PARTIES AND RELATED PERSONS AND ENTITIES

1. Sandra Giuffre ("Giuffre") is a Connecticut resident with a home and business address of 92 Keeler's Ridge Road, Wilton, Connecticut.

2. Jonathan Cole ("Cole") is a New Jersey resident with a home address of 57 De Young Road, Glen Rock, New Jersey.

3. Giuffre Associates, LLC ("GA") is a Connecticut limited Liability company ("GA"). GA's members are Giuffre, Rich Nichol and Sanjay Sathe.

4. GA-Capital, LLC ("GA Capital") is a Connecticut limited liability company ("GA Capital"), whose members are Giuffre and Nichol.

### JURISDICTION

5. This matter is brought pursuant to 18 U.S.C. § 1332. The plaintiff is a resident of Connecticut. The defendant is a resident of New Jersey. The amount in controversy exceeds $75,000.

6. Venue is proper in this Court because the contract at issue was entered into in Connecticut and specifically provides for venue in "a court of competent jurisdiction in Fairfield County in the State of Connecticut."

7. In addition, pursuant to the contract at issue, the parties to this suit "submit[ted] to the personal jurisdiction of such court [and] waiv[ed] any objection to venue in such court."

## BACKGROUND

8. Giuffre is a recognized leader in the development of unique risk solutions with commercial application in a number of fields.

9. She has developed processes and intellectual property applying capital market methodologies to business risk protection outside of the credit risk, market risk and insurance risk coverage arenas.

10. In or around January 2006, GA and GA Capital began working on a number of programs to develop marketable risk solutions.

11. GA and GA Capital entered into an agreement with DWVD to provide certain services to Giuffre, GA and GA Capital, primarily related to facilities.

12. Using Giuffre's know how, GA, GA Capital and Giuffre began expanding operations.

13. In an effort to protect her rights to intellectual property, trade secrets and her know how, Giuffre requested that DWVD execute a non-disclosure agreement.

14. Cole was and remains an employee of DWVD.

15. Cole signed the non-disclosure agreement on June 1, 2007 (the "2007 NDA").

16. Following execution of the 2007 NDA, Cole's personal involvement in Giuffre's efforts expanded, particularly with respect to Longevity Risk Technology Solutions.

17. Giuffre has developed a national reputation for her knowledge and innovation related to longevity risk solutions. She is known to be on the forefront of development of solutions, concepts and programs related to these risks.

18. Giuffre worked diligently to create and expand a "Giuffre Brand" with respect to longevity risk solutions.

19. Cole became known in the industry as someone who was working closely with Giuffre.

20. Consequently, his work was closely tied to the Giuffre Brand.

21. In 2008, an opportunity to handle a particular transaction was brought to Giuffre by Willis Insurance Brokerage.

22. Giuffre initiated a strategic alliance with a number of entities and individuals beginning in 2008 to handle that transaction and others.

23. The members of the strategic alliance were Giuffre, Cole, Steve Scott, DWVD and Willis.

24. Cole was primarily responsible for IT functions within the strategic alliance, although he would also be involved in marketing and locating potential investors.

25. However, his role was primarily to create computer code for application of Giuffre's processes.

26. In that capacity, Cole had the opportunity to become intimately familiar with all aspects of Giuffre's business plans, the specifics of her programs and processes and their application to various industries.

27. Although the 2007 NDA applied to Cole as an employee of DWD, he executed a subsequent non-disclosure agreement personally on October 3, 2008 (the "2008 NDA").

28. The 2008 NDA related specifically to Longevity Risk Technology Solution, which it defined as "any form of analytical capability, risk assessment, pricing, collaterization, and /or modeling capability, and/or computer program specification or source code that, directly or indirectly, results from, relates to, is a consequence of, or in any way involves or utilizes any Confidential Information".

29. The 2008 NDA restricted the disclosure of Confidential Information by Cole.

30. Confidential Information was defined by the 2008 NDA as "all information and data in any form, in any media, written or oral received by the Recipient form Giuffre concerning or with reference to Longevity Risk Technology Solutions, regardless of whether such information or data has been designated or marked confidential.  Such Confidential Information may include, without limitation, trade secrets, know how, inventions, technical understanding, modeling or analytical capabilities, rating agency and regulatory compliance information, clients' and suppliers' information, and methodologies, including, but not limited to, rating, collaterization, risk assessment, solution structuring, and pricing methodologies."

31. Pursuant to the 2008 NDA, Cole was specifically prohibited from disclosing any Confidential Information to any third person, firm or corporation.

32. He was further prohibited from using any Confidential Information for any purpose other than the furtherance of the strategic alliance.

33. He was also prohibited from using the Confidential Information for the benefit of a third party or in such a way as to obtain a commercial advantage over Giuffre.

34. In signing the 2008 NDA, Cole acknowledged that the protections and obligations of the 2008 NDA were necessary to protect Giuffre and her business interests.

35. To that end, he agreed that monetary damages would be insufficient to protect Giuffre's interest and he consented to the entry of injunctive relief against the breach or threatened breach of the 2008 NDA.

36. The Strategic Alliance was abandoned in early 2009.

37. In early 2009, Cole stopped working with Giuffre and all discussions between Giuffre and Cole related to Longevity Risk Technology Solutions ceased.

38. Pursuant to paragraph 3(f) of the 2008 NDA, Giuffre wrote to Cole on July 15, 2009, demanding that he return or destroy all Confidential Information in his possession and to contact Giuffre if he was unable to comply with that demand.

39. A similar letter was sent to DWVD, which remains Cole's employer.

40. Upon information and belief, DWVD has complied with the requests for return or destruction of Confidential Information.

41. Cole, however, has not responded to the July 15, 2009, letter.

42. Giuffre recently learned through conversations with DBRS, Inc., a rating agency, that Cole is presently initiating activities with respect to a transaction similar to the Willis transaction on his own behalf or on behalf of a third party, involving longevity risk solutions and utilized ratings methodologies.

43. Cole's entire knowledge related to longevity risk solutions was developed through his work with Giuffre and by his access to the Confidential Information, his use and disclosure of which is explicitly prohibited by the 2008 NDA.

44. Any use of the Confidential Information by Cole or a third party would allow either to obtain a commercial advantage over Giuffre, as the field of Longevity Risk Technology Solutions is in its infancy and Giuffre is the national leader in the field.

45. The Confidential Information as defined in the 2008 NDA constitutes trade secrets as defined by the Uniform Trade Secrets Act, Connecticut Gen. Statutes § 35-51 (d).

## COUNT ONE
## MISAPPROPRIATION OF TRADE SECRETS

57. The allegations of paragraphs 1 through 56 of the Complaint are repeated and realleged as if set forth fully herein.

58. The Confidential Information is a trade secret.

59. Cole misappropriated the trade secrets through his (2) disclosure or use of a trade secret of another without express or implied consent by a person who . . . (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." C.G.S. § 35-51(b).

60. Cole was aware of the protected nature of the Confidential Information.

61. He acknowledged by signing the 2008 NDA that he was prohibited from using or disclosing the Confidential Information for any purpose and specifically to obtain a commercial advantage over Giuffre.

62. Such misappropriation has been undertaken in bad faith.

63. Giuffre has been and continues to be damaged by the misappropriation of the trade secrets.

WHEREFORE, the plaintiff demands:

    a. compensable damages,

    b. attorneys' fees,

    c. loss of business damages,

    d. costs of this suit,

    e. interest,

    f. injunctive relief, and

    g. any other relief this Court deems just and equitable under the circumstances.

## COUNT TWO

## BREACH OF CONTRACT

64. The allegations of paragraphs 1 through 56 of the Complaint are repeated and realleged as if set forth fully herein.

65. Cole signed the 2008 NDA on or about October 3, 2008.

66. The terms of the 2008 NDA were not modified.

67. Cole has breached the obligations of the 2008 NDA by:

    a. refusing to return or destroy the Confidential Information,

    b. using the Confidential Information for his own use and benefit,

    c. disclosing the Confidential Information to third parties, and

    d. disclosing and/or using the Confidential Information in order to obtain a commercial advantage over Giuffre.

68.     Giuffre has been and continues to be damaged by the breach of the 2008 NDA by Cole.

WHEREFORE, the plaintiff demands:

   a.   compensable damages,

   b.   attorneys' fees,

   c.   loss of business damages,

   d.   costs of this suit,

   e.   interest,

   f.   injunctive relief, and

   g.   any other relief this Court deems just and equitable under the circumstances.

PLAINTIFF,
SANDRA GIUFFRE

BY:_____
Theodore Heiser
ct23807
Heiser & Heiser, LLC
22 Kings Highway
Chester, Connecticut 06412
860-526-8495 (t)
860-526-8496 (f)
theiser@heiserandheiser.com